**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER RAY WISEMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>HERRERA, et al<br><br>  Defendants. | Case No. 1:12-cv-01730-AWI-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docs. 48, 58)**<br><br>**OBJECTIONS DUE WITHIN 30 DAYS** |

In this action, Plaintiff claims Defendants violated the Eighth Amendment of the United States Constitution from July 7, 2011 through March 6, 2012, because they forced him to choose between accessing the exercise yard and accessing the law library. (Docs. 18, 19, 47.) Because Plaintiff fails to show that his right of access to the courts was not infringed and he received constitutionally minimal outdoor exercise time, the Court recommends Plaintiff's motion for summary judgment be DENIED and Defendants' motion for summary judgment be GRANTED.

**I.  Summary Judgment Standard**

Any party may move for summary judgment. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." *Id.* The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). This requires Plaintiff's opposition to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

"But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - the showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, <u>Summary Judgment Under the Federal Rules: Defining Issues of Material Fact</u>, 99 F.R.D. 465, 487 (1984)). Thus, as to Plaintiff's motion for summary judgment, Plaintiff must demonstrate there is no triable issue as to

the cognizable matters alleged in his complaint. *Id*. This requires Plaintiff to establish beyond controversy every essential element of his claim(s). *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992); *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n. 1 (9th Cir. 1987) (per curiam)), *amended by* 135 F.3d 1318 (9th Cir. 1998); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc); *Schroeder v. MacDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *Lew*, 754 F.2d at 1423. If the plaintiff states that the facts in the complaint are true under penalty of perjury, the pleading is "verified." *Schroeder*, 55 F.3d at 460 n. 10.

///
///
///
///

## II. Plaintiff's Cognizable Allegations in the Second Amended Complaint[1]

While housed at Pleasant Valley State Prison, from July 7, 2011 through March 6, 2012, Plaintiff was housed in Administrative Segregation; specifically in Facility D, Building 4. (Doc. 18, 2ndAC, pp. 2,3, 5-12.[2]) During this time, Plaintiff alleges he was forced to choose between using the law library and exercising outdoors. (*Id.*) Plaintiff alleges that he made Defendants aware of this conflict and yet they continued to make him choose between these activities. (*Id.*)

## III. The Evidence

The parties use essentially the same evidence to support their own motions and to oppose the motions filed against them. Thus, they are discussed jointly below. Both sides agree that the schedules for Ad. Seg. Inmates to access the exercise yard and the law library varied depending on cell assignments and that Plaintiff was moved to different cells from July of 2011 through March of 2012.

### A. Plaintiff's Evidence

To support his motion for summary judgment and to oppose Defendants' motion, Plaintiff presents evidence that he was placed in Ad. Seg. on July 7, 2011. (Doc. 51, Plntf. MSJ, ¶2, Ex. A; Doc. 66, Plntf Opp to Def MSJ, p. 76.) On August 5, 2011, Plaintiff informed both Defendants A. Martinez and R. Godinez that he was being forced to choose between attending the law library or exercising in the outdoor yard every Tuesday and Friday, but they made no efforts to accommodate Plaintiff. (Doc. 51, at ¶5; Doc. 66, at p. 76.)

On August 19, 2011, Defendant R. Godinez conducted the sign-ups for recreation yard and Plaintiff asked if it was possible for him to receive yard time after he visited the law library. However, Plaintiff was informed that he would have to choose between the two activities. (Doc. 51, at ¶6, Ex. C, H, I, J, K; Doc. 66, at pp. 76-77.) That same day Defendant A. Martinez conducted the law library sign-ups and Plaintiff made the same request to which he was again

---

[1] This is a rendition of the factual allegations upon which Plaintiff's claims against Defendants were found cognizable which are presented here for overview purposes only. Undisputed and disputed material facts are discussed where applicable in the following sections. The 2ndAC was not signed under penalty of perjury.

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

told that he would have to choose between the two activities.  (Doc. 51, at ¶7, Ex. D, L, M, N, R; Doc. 66, at p. 77.)  On August 19, 2011, Plaintiff prepared an inmate request (CDCR 22 Form) to give to Defendant B. Martinez regarding the situation.  (Doc. 51, at ¶8, Ex. E; Doc. 66, at p. 77.)

While utilizing the law library on August 23, 2011, Plaintiff asked Defendant A. Martinez if he could speak to the sergeant to go "up the chain" regarding this situation, but was advised that he could not do so -- at which point Plaintiff and Defendant A. Martinez got into an argument.  (Doc. 51, at ¶9, Ex. O, P, Q; Doc. 66, at p. 77.)  During this argument, Defendant B. Martinez appeared and Plaintiff advised her of the situation.  (Doc. 51, at ¶9, Ex. O, P, Q; Doc. 66, at p. 77.)  She reiterated that Plaintiff would have to choose between law library and exercise yard and that it was "policy."  (Doc. 51, at ¶9, Ex. O, P, Q; Doc. 66, at p. 77.)  Plaintiff then handed Defendant B. Martinez his CDCR 22 Form which she read and handed back and instructed Plaintiff to mail it to her, indicating she would write a response to it.  (Doc. 51, at ¶9, Ex. O, P, Q; Doc. 66, at p. 77.)  Defendant B. Martinez took no corrective actions at that time and Plaintiff mailed the form to her on August 23, 2011.  (Doc. 51, at ¶9, Ex. O, P, Q; Doc. 66, at pp. 77-78.)

Plaintiff again spoke with Defendant B. Martinez on September 9, 2011 in the law library and asked why he had not received a response to his CDCR 22 Form to which she responded that she has a stack of inmate mail on her desk and that she did not have a chance to get to it yet, but that he would get her response when she got around to it.  (Doc. 51, at ¶10; Doc. 66, at p. 78.)  That same day, Lieutenant D. Nelson (no longer a defendant in this action) came into the law library area and Plaintiff informed him of the situation.  (Doc. 51, at ¶10; Doc. 66, at p. 78.)

Four days later, on September 13, 2011, Plaintiff was rehoused as a result of action taken by Lt. Nelson, but he still had to choose between accessing exercise yard or law library services each Friday.  (Doc. 51, at ¶12, Ex. B, C; Doc. 66, at p. 79.)  On October 10, 2011, Lt. Nelson interviewed Plaintiff on his inmate grievance regarding the situation and during the interview, Lt. Nelson ordered Defendant B. Martinez to locate a housing cell for Plaintiff where the exercise yard and law library schedules did not overlap, which was accomplished shortly thereafter.  (Doc. 51, at ¶13, Ex. B; Doc. 66, at p. 78.)

///

### B. Defendants' Evidence

Defendants present evidence that from July 7, 2011 through August 2, 2011, Plaintiff did not have a conflict between attending outdoor exercise yard or law library and that, despite the lack of a conflict, Plaintiff elected not to attend outdoor exercise yard a total of seven times. (Doc. 58, Def MSJ P&A, p. 3; Doc. 59, DUF ## 6, 14, 15.)

From August 4, 2011 through September 12, 2011, Plaintiff had access to the outdoor exercise yard for four hours on Tuesdays, two hours on Thursdays, and four hours on Fridays. (Doc. 58, at p. 3; Doc. 59, DUF # 17.) During this time frame, Plaintiff declined to attend exercise yard on seven days -- only four of which he accessed law library services instead. (Doc. 58, at p. 3; Doc. 59, DUF ## 18, 19.) Notably, during this time, Plaintiff filed a state habeas petition. (Doc. 58, at p. 3; Doc. 59, DUF #20.)

From September 13, 2011 through October 9, 2011, Plaintiff had access to the outdoor exercise yard for two hours on Mondays, four hours on Fridays, and four hours on Sundays. (Doc. 58, at p. 4; Doc. 59, DUF #26.) Plaintiff declined to attend outdoor exercise yard on eight of those days -- only one of which he chose to attend the law library instead. (Doc. 58, at p. 4; Doc. 59, DUF ## 27, 28.)

From October 10, 2011 through October 13, 2011 and from October 27, 2011 through March 5, 2012, the schedules for Plaintiff's access to the outdoor exercise yard and the law library did not overlap. (Doc. 58, at p. 4; Doc. 59, DUF ## 6, 29, 33, 35.)

### IV. Legal Standards

#### A. Choosing between access to law library or exercise yard

It is true that "[f]orcing a prisoner to choose between using the prison law library and exercising outdoors is impermissible because 'an inmate cannot be forced to sacrifice one constitutionally protected right solely because another is respected.' " *Hebbe v. Pliler*, 627 F.3d 338, 343-44 (9th Cir. 2010) quoting *Allen v. City and County of Honolulu*, 39 F.3d 936, 940 (9th Cir.1994). However, *Hebbe* clarified that merely being forced to choose between yard time and law library time does not, in and of itself, violate an inmate's rights; but that to be actionable, such decision must result in a violation of Plaintiff's constitutional right of access to the courts. *Hebbe*,

6

627 F.3d at 344; *ref Lewis v. Casey* 518 U.S. 343, 351 (1996). This is so because law libraries and legal assistance programs are merely a means of ensuring access to the courts. *Id.* Inmates have no "abstract, freestanding right to a law library or legal assistance . . . [a]n inmate . . . must . . . demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis,* at 351, 353 n. 3, 116 S.Ct. 2174. Deficiencies in law libraries and/or access thereto rise to the level of a constitutional violation when such deficiencies deprive an inmate of access to the courts "predicated on the pursuit of an 'arguably actionable' legal claim." *Hebbe*, 627 F.3d at 344, quoting *Lewis* at 351.

Thus, to prove an unconstitutional action, an inmate must show that he was forced to choose between yard time and law library time, that such choice resulted in deprivation of his right of access to the courts, *Hebbe*, 627 F.3d at 343-44, and caused him to sustain an actual injury by being shut out of court. *Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179 (2002); *Lewis*, 518 U.S. at 351; *Hebbe,* 627 F.3d at 342; *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009); *Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004). To this end, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The protected legal claims are limited to direct criminal appeals, habeas petitions, and civil rights actions such as those brought under section 1983 to vindicate basic constitutional rights. *Id.* (quotations and citations omitted). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original). The frustrated/impaired legal claim may be either loss of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher,* 536 U.S. at 412-15.

Thus, Plaintiff must show that, because he was required to choose between yard time and law library time, he lost and/or no longer may pursue a direct criminal appeal, a habeas petition, or a civil rights action.

### 1. Analysis

Plaintiff argues that he was forced to frequently forego outdoor recreation on days when he signed up to use the law library. (Doc. 50, Plntf. MSJ, p. 11-12.) Plaintiff relies heavily on

*Allen v. City and County of Honolulu,* 39 F.3d 936 (9th Cir. 1994) for his argument that, since he has a constitutional right to both outdoor exercise and to access a law library, his rights were violated merely by being forced to choose between accessing exercise yard and law library services and argues that he should have been given access to the exercise yard after he utilized the law library where the schedules overlapped.  (Doc. Doc. 50, Plntf. MSJ, pp. 5-6, 8-11; Doc. 66, Plntf. Opp, pp. 3-5, 8-12, 18.)    Plaintiff errantly asserts that if he "was denied access to the courts due to inadequate law library or lack of legal assistance, he need not show actual injury." (Doc. 66, Plntf. Opp., p. 7, citing *Milton v. Morris*, 767 F.2d 1443, 1447 (9th Cir. 1985).)  As noted above, this is not the standard.  Plaintiff relies on a generalized principle of law (i.e. that an inmate cannot be forced to sacrifice one protected right at the sake of another) without showing that any of his rights were sufficiently encroached upon to cause a violation.  While *Allen* correctly identifies the fact that an inmate cannot be forced to choose between accessing the exercise yard and the law library, the more recent case of *Hebbe* clarified that, where such a choice is required, it is only actionable if the inmate suffered a violation of his right of access to the courts as a result.

        Defendants argue that there is no evidence that Plaintiff's right to access the court was violated as he has not shown that he sustained actual injury involving a non-frivolous legal claim as a result Defendants' failure to fulfill their constitutional obligations.  (Doc. 58, Def. MSJ, p. 6; Doc. 50, DUF #20.)  Defendants also show that the Fresno County Superior Court order for an informal response in that habeas matter, issued on November 3, 2011 -- which was after Plaintiff's was moved to a different cell that resolved the conflict between his law library and exercise yard schedules for which Plaintiff does not complain.  (Doc. 58, Def. MSJ, p. 6; Doc. 59, DUF ##21-23.)

        Finally, Plaintiff admits that he did not allege a First Amendment violation from a denial of meaningful access to the courts, but repeats his argument that merely being forced to choose between accessing the law library and the exercise yard is impermissible in and of itself so as to violate his rights.  (Doc. 66, Plntf. Opp., pp. 1, 6-12.)

        Though he was required to choose between accessing the law library and the exercise yard

8

variously from July 7, 2011 through October 9, 2011, Plaintiff fails to show that, he lost and/or no longer may pursue a direct criminal appeal, a habeas petition, or a civil rights action as a result. There is no dispute of material fact that Plaintiff did not sustain any actual injury for his rights to access the court to have been violated. Plaintiff neither meets his burden on his motion for summary judgment; nor raises a triable issue of fact as to sustaining an actual injury from an inability to access the courts which arose from a lack of access to law library services to raise a triable issue of fact in opposition to Defendants' motion. Thus, Defendants are entitled to summary judgment on Plaintiff's claims that his constitutional rights were violated because he was forced to choose between attending exercise yard or law library from July 7, 2011 through October 9, 2011 and on any claim that his First Amendment rights of access to the courts was violated.

**B. Exercise**

Plaintiff fares no better when his case is examined for violation of his rights under the Eighth Amendment for denial of access to outdoor exercise yard because he chose to access law library services when their schedules overlapped.

The Eighth Amendment protects prisoners from deliberate indifference to inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *accord Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). Extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to him. *E.g.*, *Farmer*, 511 U.S. at 847; *Thomas*

*v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010). Inmates have a constitutional right to exercise and the denial of out-of-cell exercise for an extended period of time is sufficiently serious to state a claim under the Eighth Amendment. *Thomas*, 611 F.3d at 1151-52.

### 1. Analysis

Defendants show that while housed in cell number 127, from July 7, 2011 through August 2, 2011, Plaintiff was offered ten hours of outdoor exercise—or "yard time"—per week. (Doc. 58 at 3 Def. MSJ, citing DUF ##6, 14.) During this period, law library access was available to Plaintiff on Tuesday and Friday and yard time was allowed on Sunday, Monday and Wednesday. Id. Thus, there was no conflict in the times offered for him to have yard time while housed in cell 127. While housed in cell 127, Plaintiff declined yard time seven times. (Doc. 58 at 3 Def. MSJ, citing DUF # 15.)

While housed in cell 218 from August 4, 2011 through September 12, 2011, Plaintiff had the same ten hours of yard time per week offered to him, though the days were Tuesday, Thursday and Friday. (Doc. 58 at 3 Def. MSJ, citing DUF # 17.) During this period, law library access still was provided on Tuesday and Friday. (Doc. 58 at 3 Def. MSJ, citing DUF ##6, 14.) However, on seven days during this period, Plaintiff declined yard time and on only four of these days was this due to his desire to attend the law library. (Id. at 3, citing DUF 19.) Thus, during these weeks, available to Plaintiff was six hours of yard time, assuming he did not decline the exercise time for other reasons. Id.

From September 13, 2011 through October 9, 2011, Plaintiff was housed in cell 149. (Doc. 58 at 4 Def. MSJ, citing DUF # 26.) A total of ten hours per week of yard time was available to him with two hours provided on Monday and four hours on Friday and Sunday. Id. citing DUF 26. During this period, Plaintiff refused exercise time eight times. Id. citing DUF 27. Only one occasion did he attend the law library rather than use his yard time. Id. citing DUF 28.

From October 10, 2011 through October 13, 2011 and October 27, 2011 through March 5, 2012, Plaintiff was allowed ten hours of yard time per week and there were no conflicts between yard time and law library time. (Doc. 58 at 4 Def. MSJ, citing DUF ## 29, 33, 35.)

Thus, from August 4, 2011 through October 9, 2011, there were only five days that Plaintiff made a choice not to attend outdoor exercise and to access law library services instead. (Doc. 58, Def. MSJ, p. 8; Doc. 59, DUF ##17-19, 24-28.) Defendants correctly argue that missing only five days of outdoor exercise yard in just over a two month span of time to access the law library is not a constitutional violation. (Doc. 58, Def. MSJ, 7:25-8:22, citing *Hayward v. Procunier,* 629 F.2d 599, 603 (9th Cir.1980) (denial of yard time for a month not unconstitutional); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (denied opportunity to exercise for twenty-one days is not unconstitutional); *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir.1988) (denial of yard time for twenty-eight days not unconstitutional). Defendants thus met their burden of showing that the conflict between Plaintiff's schedules to access law library services and exercise yard did not constitute a sufficiently serious deprivation to violate Plaintiff's rights under the Eighth Amendment.

Plaintiff argues that he has a constitutionally protected right to exercise and that if a prison allots a specific number of hours for exercise each week, "the prison officials are aware that denial of exercise for a substantial period creates an excessive risk to prisoner's health." (Doc. 66, Plntf. Opp, pp. 3-4,16-18.) Here, Plaintiff again relies on a generalized principle of law (i.e. that anything less than a specific number of hours per week where an allotment is made by the prison, equates to a violation) without showing that any of his rights were sufficiently encroached upon to meet the objective prong for an Eight Amendment violation. It is true that the Ninth Circuit has stated that where a "prison allots a standard number of hours per week for exercise, the prison officials are aware that denial of this exercise for a substantial period creates an excessive risk to a prisoner's health." *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) *ref. Allen v. Sakai*, 48 F. 3d 1082, 1088 (9th Cir. 1995). However, the operative words in this quote are "substantial period." Defendants have shown that Plaintiff only missed exercise yard on five days in a sixty-five day period due to the conflict between the schedules for his access to law library services and exercise yard. Plaintiff presents no evidence to contradict this or to show that it is inaccurate. Five days in a sixty-five day period simply does not equate to a "substantial period" to have created an excessive risk to Plaintiff's health.

Finally, to be actionable, even a temporary denial of outdoor exercise must cause medical effects to equate to a substantial deprivation. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (denial of outdoor exercise for 22 days was temporary and insufficient to state a claim absent adverse medical effect). Plaintiff appears to have relied on this legal standard when he stated in his declaration supporting his motion that as of September 10, 2011, he was experiencing "ongoing suffering of continued headaches, eye socket aches, muscle cramps, stress, anxiety, deep depression, and ongoing lower back pain and discomfort." (Doc. 51, Plntf. Dec., at pp. 6-7. However, Plaintiff does not present evidence to show that he had medical knowledge and/or training to be qualified to render an opinion as to the cause of these symptoms and the exhibit he attached to support this assertion is nothing more than a medical request form that Plaintiff filled out. Moreover, he fails to explain why the denial of yard time on five occasions was the cause of these impairments rather than them being caused by the 18 times he refused to attend yard time for reasons other than wanting to go to the law library. Thus, Plaintiff has not met his burden on his motion for summary judgment and has not raised a triable issue of fact as to his lack of access to the exercise yard in opposition to Defendants' motion.

## V. Conclusions and Recommendations

Based upon the foregoing, the Court finds Defendants have met their burden of demonstrating Plaintiff cannot prove his case and Plaintiff has not. Thus, the Court recommends that Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

As set forth herein, the Court HEREBY RECOMMENDS that:

(1) Plaintiff is not entitled to judgment as a matter of law and his Motion for Summary Judgment, filed on February 17, 2015 (Doc. 48), should be DENIED;

(2) Defendants R. Godinez, A. Martinez, and B. Martinez are entitled to judgment as a matter of law such that their Motion for Summary Judgment, filed April 22, 2015 (Doc. 58), should be GRANTED; and

(3) the Clerk of the Court be directed to enter judgment for the Defendants R. Godinez, A. Martinez, and B. Martinez, and against Plaintiff.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 30 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 27, 2015**                                   **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

13